# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy Jones, | Case No. 21-cv-2576 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden J. Fikes, | |
| Respondent. | |

This matter is before the undersigned United States Magistrate Judge on Petitioner Jeremy Jones' ("Petitioner" or "Jones") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (Dkt. 1); request for preliminary injunction ("Preliminary Injunction Motion") (Dkt. 23); Supplemental Briefing and Motion to Deny All Request for Extension of Time ("Motion to Deny Extension Request") (Dkt. 45); and Motion for Default Judgment (Dkt. 47). Respondent J. Fikes ("Respondent" or "Warden Fikes") opposes the Petition and Motions. (*See* Dkts. 19, 38, 48.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition and Motions be denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On January 16, 2019, Jones was sentenced by a district judge in the Western District of Tennessee to an aggregated 102 months of imprisonment with three years of supervised release to follow. (Dkt. 49-2, Gov't. Ex. 2 at 2-3 (Jones' Public Information

Inmate Data).)[1]  Jones was committed on March 12, 2019.  (*Id.*)  As of March 13, 2023, Jones' statutory release date via good conduct time ("GCT") was October 12, 2024 and his early offender two-thirds date was March 16, 2023.  (*Id.* at 4.)

Jones is eligible to earn First Step Act ("FSA") time credits, has been assigned a "Minimum" or "Low" score under the Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN"), and is on the waiting list for, is participating in, and has completed certain evidence-based recidivism reduction ("EBRR")[2] programs and productive activities ("PA")[3].  (*See* Dkt. 39 (Giddings Decl.) ¶ 21; *see also* Dkt. 39-4, Gov't. Ex. 4 at 1 (Jones' FSA Time Credit Assessment dated January 8, 2023); Dkt. 20 (Winger Decl.) ¶¶ 6, 10.)  As of February 11, 2023, Jones had accrued 878 FSA program days from March 12, 2019 to February 11, 2023, with 554 program days disallowed. (Dkt. 49-1, Gov't. Ex. 1 at 1 (Jones' FSA Time Credit Assessment dated February 11, 2023); *see also* Dkt. 49 (Winger Decl.) ¶ 4.)  Jones' Sentence Monitoring Computation Data as of March 27, 2023 shows 365 days of FSA time credits have been applied

---

[1]     Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

[2]     "An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison."  28 C.F.R. § 523.41(a).

[3]     "A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating." 28 C.F.R. § 523.41(b).

towards his release for an early release date of October 13, 2023. (Dkt. 56-1, Pet. Ex. 1 at 2-3 (Jones' Sentence Monitoring Computation Data as of March 27, 2023).)

On November 18, 2021, Jones filed a Petition under 28 U.S.C. § 2241 in this Court against Respondent J. Fikes, who is the Warden of the Federal Correctional Institution at Sandstone, Minnesota, where Jones was incarcerated when he filed the Petition. (Dkt. 1; Dkt. 1-2 at 1.) On April 12, 2023, Jones was transferred to Diersen Charities Memphis, a halfway house under the supervision of the Nashville Residential Reentry Office. (Dkt. 54 (Winger Decl.) ¶ 5; *see also* Dkt. 54-1, Gov't Ex. 1 at 1 (Jones' Inmate Profile); Dkt. 56 at 1); https://www.bop.gov/inmateloc/ (last visited May 31, 2023).

In the Petition, Jones claims that he has "accumulated 12 months of First Step Act Credits, in conjunction with the year incentive pursuant to 18 U.S.C. 3621(e)(2)(B) and the maximum amount of [Residential Reentry Center ("RRC")] Placement (12 months) Jones was eligible for release on October 12, 2021." (Dkt. 1 at 1.) The Petition sought: (1) for his sentence to be credited by one year under 18 U.S.C. § 3621(e)(2)(B), or in the alternative, to be admitted into the Residential Drug Abuse Program ("RDAP") and transferred to a minimum security facility so that he can participate in the RDAP; (2) for the Federal Bureau of Prisons ("BOP") to apply FSA time credits he would have earned if he participated in the RDAP and to apply his FSA time credits for other programs he participated in so that he may be immediately transferred to pre-release custody; (3) for the BOP to immediately consider him for prerelease custody pursuant to 18 U.S.C. § 3621(b) and 3624(c) and to immediately transfer him to a "lesser security facility

(Minimum Security Camp)"; (4) "[i]n the alternative as a second option only" for the BOP to "restore all Gate Pass privileges and to 'Promulgate' a written policy for the Gate Pass Program where it is being unconstitutionally applied"; and (5) for the BOP to "bring Jones IFRP payments in compliance with his judgement and Commitment set forth by his sentencing Judge and remove all sanctions i.e. FRP refuse and commissary restrictions." (*Id.* at 1-2.)  The Petition also sought a "temporary restraining order, [p]reliminary [i]njunction or [b]ond releasing or transferring [him] into pre-release custody pending the resolution of this litigation."  (*Id.* at 1.)

On December 17, 2021, Jones filed a document which the Court construed as a motion to amend the Petition.  (Dkts. 6, 7.)  On January 7, 2022, the Court denied that motion without prejudice due to Jones' failure to comply with the Court's Local Rules and gave Jones an opportunity to file an amended petition by January 28, 2022.  (Dkt. 7 at 2-3.)  Jones did not file any amended pleading by that deadline, and instead on February 4, 2022, sought an extension of time to file the pleading.  (Dkt. 9.)  On February 7, 2022, the Court extended the deadline for Jones to file an amended pleading to February 28, 2022, "failing which the Court [would] treat Dkt. 1 as the operative pleading."  (Dkt. 10.)

On February 25, 2022, Jones requested that this case be stayed and sought additional time to file the amended pleading.  (Dkt. 11.)  On April 12, 2022, the Court denied Jones' stay request, but granted him "one more chance—a final chance—to submit an amended pleading" by May 9, 2022.  (Dkt. 12 at 3-4.)  The Court stated that this action would proceed on the original Petition if Jones failed to file an amended

4

pleading in the time allowed.  (*Id.* at 4.)  Because Jones failed to file an amended

pleading by the May 9, 2022 deadline, on May 19, 2022, the Court ordered Warden Fikes

to file an answer to the Petition (Dkt. 1) within 21 days and gave Jones the opportunity to

file a reply within 21 days of when the answer is filed.  (Dkt. 13.)

On June 9, 2022, the Court granted Warden Fikes' request for an extension of time

to file an answer, making Respondent's answer due on June 30, 2022.  (Dkt. 17.)  On

June 30, 2022, Warden Fikes filed an Answer to the Petition, along with the declaration

of Kyja Winger, the Unit Manager at the Federal Prison Camp in Duluth, Minnesota.

(Dkts. 19, 20.)  In the Answer, Respondent claims that Jones' Petition should be

dismissed because: (1) his allegation regarding being improperly excluded from the

RDAP is a successive claim that was previously dismissed for lack of jurisdiction and an

abuse of the writ; (2) Jones' request to have the BOP calculate his FSA time credits is

moot; (3) Jones' request to have his FSA time credits immediately applied to his sentence

is not ripe because his earned time credits do not equal the remainder of his sentence;

(4) Jones' request to be transferred to RRC or home confinement should be dismissed

because he is not entitled to those placements and the Court lacks jurisdiction to review

the BOP's decision to deny him such request; and (5) his request for a preliminary

injunction, temporary restraining order, or bond should be denied.  (Dkt. 19 at 15-26.)

Respondent also argues that an evidentiary hearing is unnecessary because this matter can

be resolved on the record before the Court.  (*Id.* at 14-27.)  On July 18, 2022, Jones filed

a Reply to the Answer, contending that the BOP "grossly miscalculated" his time credits

and that he is eligible for "immediate release" under the Second Chance Act ("SCA").
(Dkt. 22 at 1-4.)

On October 24, 2022, Jones filed the Preliminary Injunction Motion noting the
request in his Petition for "the immediate application of my earned time credits," stating
that the BOP had "partially granted the relief sought," and asking the Court to order the
BOP to immediately apply 277 days of FSA time credits (554 program days) "to [his]
supervised release, his statutory sentence, [residential reentry center] placement or home
confinement."  (*See* Dkt. 23 at 1, 4 (capitalization amended).)  Jones claims in the Motion
that the BOP had partially granted the relief sought because it applied a portion of his
FSA time credits to his sentence but that the BOP disallowed "609 program days or 304.5
days of earned time credit" due to his refusal to participate in the BOP's Inmate Financial
Responsibility Program ("IFRP"), which he alleges violates his statutory and due process
rights under 18 U.S.C. § 3632, 28 U.S.C. §§ 523 and 541, and the "Administrative
Procedures Act 'Notice and Comment' requirement and the ex post facto clause of the
Constitution."  (*Id.* at 1-3.)  To be clear, while the BOP initially disallowed a total of 609
program days as of January 8, 2023 (*see* Dkt. 39-4, Gov't Ex. 4 at 1), as of February 11,
2023, the BOP had made adjustments and has now disallowed only 554 program days
because Jones was on IFRP "refuse" status (Dkt. 49-1, Gov't Ex. 1 at 1-2 (disallowing
364 days from June 10, 2020 to June 9, 2021), 2 (disallowing 190 days from August 3,
2021 to February 9, 2022)).

On November 29, 2022, the Court ordered Respondent to respond to the
Preliminary Injunction Motion by December 13, 2022, and gave Jones the opportunity to

6

file a reply within 14 days from the date the response was served on him.  (Dkt. 25.)  On December 13, 2022, Respondent sought an extension of time to January 6, 2023 to file the response, which the Court granted.  (Dkts. 29, 33.)  On January 6, 2023, the Court granted Respondent additional time, making the response due on January 13, 2023. (Dkts. 34, 37.)

In the meantime, on December 2, 2022, Jones filed a motion to amend the Petition to "add or amend his FSA claim pursuant to Federal Rules of Civil Procedure 15 due to the Bureau of Prisons using its 'Auto calculation' to partially apply his FSA earn [sic] time credits and disallow 609 FSA days for Financial Responsibility Refuse status." (Dkt. 26 at 1.)  As discussed above, however, the BOP disallowed 554, not 609, days because Jones was on IFRP "refuse" status.  (Dkt. 49-1, Gov't Ex. 1 at 1-2.)  On February 28, 2023, the Court granted Jones' motion to amend as unopposed.  (Dkt. 44.)

On January 13, 2023, Respondent filed a Response to Preliminary Injunction Motion, along with the declaration of Susan Giddings, who is employed by the BOP as Chief of the Unit Management Section of the Correctional Programs Branch.  (Dkts. 38, 39 ¶ 1.)  Respondent cites BOP Program Statement 5410.01, dated November 18, 2022, for the proposition that the IFRP is a type of PA and claims that as a result, the BOP properly disallowed the 554 program days because Jones was on IFRP "refuse" status from June 10, 2020 to June 9, 2021 and August 3, 2021 to February 9, 2022.  (Dkt. 38 at 7 (citing Dkt. 39 (Giddings Decl.) ¶ 24; Dkt. 39-4, Gov't. Ex. D at 1).)  Respondent contends that by refusing to participate in the IFRP, Jones in effect "opted out" and was therefore not in time credit earning status during the relevant periods.  (*Id.* at 5-10.)

On January 23, 2023, Jones filed a "Response to Reply by Respondent for Motion for Preliminary Injunction" ("Reply to Preliminary Injunction Motion"), along with supporting exhibits. (Dkts. 41, 42.)  In the Reply to Preliminary Injunction Motion, Jones argues that he earned FSA time credits during the two periods that he was placed in IFRP "refuse" status.  (Dkt. 41 at 1-2.)  Jones contends that Respondent failed to timely notify him (or other inmates) that the IFRP is a type of PA, assign the IFRP to him as a PA during the relevant periods, or inform him of the consequences, under the FSA, of failing to participate in the IFRP.  (*Id.*)  Jones also argues that the BOP changed the rate at which he should be earning FSA time credits without notice to him and that he should be earning time credits at a rate of 15 days, instead of the 10 days assigned to him, for every 30 days of successful participation.  (*Id.* at 2.)  Jones asks the Court to order Respondent to "subtract 365 [FSA] days from his statutory sentence" for an early release date of "10-12-2023," and to transfer him "into Residential Re-Entry Center placement for 554 days (9 months and 7 days) for the remainder of his period of incarceration pursuant to the" FSA.  (*Id.* at 1.)

On February 27, 2023, the Court sought supplemental briefing from the parties regarding the disallowance of 554 FSA program days due to Jones being in IFRP "refuse" status, noting that both "refuse" periods occurred after the January 15, 2020 deadline for the BOP to complete its initial risk and needs assessment of Jones and before the BOP issued Program Statement 5410.01 on November 18, 2022, which appeared to be the first time the BOP identified the IFRP as a type of PA.  (Dkt. 43 at 1-2.)  The Court ordered Respondent to address Jones' arguments relating to the qualification of the

IFRP as a PA under the FSA, including when the IFRP was first identified as a PA and when it was assigned to Jones for purposes of the FSA; Jones' contentions that he should be earning time credits at a rate of 15 days for every 30 days of successful programing; and Jones' argument that the BOP retroactively disallowed the program days without notice to him in violation of his "Statutory Rights" under 18 U.S.C. § 3632, his due process rights, the *Ex Post Facto* clause of the Constitution, and the notice-and-comment provisions of the Administrative Procedures Act. (*Id.* at 1-4.) The Court also ordered Respondent to address Jones' claims regarding Gate Pass privileges, as Respondent had not done so in his Answer. (*Id.* at 4.)

On March 8, 2023, Jones filed the Motion to Deny Extension Request, requesting that the Court deny any requests for extension of time from Respondent to file the supplemental briefing. (Dkt. 45.) Jones claims in that Motion that the "BOP has already applied 365 days toward [his] statutory sentence" and "request[s] the court apply 6 months toward his statutory sentence, 12 months toward[s his] Supervised Release because at this point [he] cannot use all the credits he has and he will still be gaining credits while in RRC Placement." (*Id.* at 2.) Jones also filed the Motion for Default Judgment on March 8, 2023, requesting that judgement be issued for his RDAP claim because Respondent failed to respond to it. (Dkt. 47 at 1.) Jones states that he "will also voluntarily dismiss any claim against the 'Gate Pass' Program at FCI Sandstone." (*Id.*)

On March 20, 2023, Respondent filed a Supplemental Response maintaining that Jones was properly disallowed the 554 days due to being in "refuse" status regardless of when the IFRP was formally added as a PA because he was informed of the

consequences stemming from an inmate's refusal to participate in the IFRP "upon his initial classification[.]" (Dkt. 48 at 5-7.) Respondent argues that the FSA is ambiguous, urges the Court to defer to the BOP's interpretation of the FSA's time credit provisions, and contends that the "Court should construe the relevant statutory provisions regarding the earning of" FSA time credits "in view of the BOP's role as the administering agency." (*Id.*) Respondent frames the issue before the Court as "whether [Jones] can apply his" FSA time credits "to advance his release date from custody" instead of "[w]hether Jones has a constitutional right to earn" time credits, and argues that Jones has no liberty interest in the application of his time credits or how those credits are applied. (*Id.* at 8-11.) Respondent also contends that the FSA explicitly limits Jones' ability to apply his time credits until the amount of time credits he has earned equals the remainder of his imposed term of imprisonment. (*Id.* at 11 (citing 18 U.S.C. § 3624(g)(1)(A).) Respondent asserts that Jones' Gate Pass privileges claim is moot and that his Motion for Default Judgment regarding his RDAP claim should be denied. (*Id.* at 11-12.)

On March 27, 2023, Jones filed a Supplemental Reply Brief, maintaining that he was never notified that the IFRP is a type of PA or that he was not earning FSA time credits due to being in "refuse" status. (Dkt. 51 at 1.) Jones asserts that as of March 12, 2023, he had earned 1,460 program days, which is 730 days of FSA time credits, requests the Court to order "the BOP to calculate his total number of time credits and apply them toward transferring him to early supervised release due to he [sic] will still be earning credits during the last 6.6 months of his sentence and he will not get to use them" and contends that as of March 23, 2023, he had not benefited from the SCA. (*Id.*)

On April 24, 2023, the Court requested an update regarding Jones' current place of incarceration given that his March 27, 2023 filing showed his address as the Federal Prison Camp in Duluth, Minnesota, but the BOP's online Inmate Locator listed him as at "Nashville RMM," suggesting that he is at some type of reentry facility being managed by the Residential Reentry Management field office in Nashville, Tennessee.  (*See* Dkt. 52.)  The Court also ordered the parties to address any effects that Jones' current place of confinement has on his FSA and SCA claims.  (*Id.* at 2.)  On May 5, 2023, Respondent filed an Update, stating that Jones had been transferred to an RRC.  (Dkt. 53.)  On May 18, 2023, Jones filed a Response to the Update, noting that he had been transferred to an RRC, stating that his statutory release date is October 12, 2023, and asking the Court to order the BOP to "place 5 months towards Jones['] statutory sentence transferring him immediately to Supervised release and all additional first step act credits be credited toward Jones['] 3 year Supervised release period[.]"  (Dkt. 56 at 1-4.)

This matter is now ripe for review.

## II.    LEGAL STANDARD

For relief to be granted under 28 U.S.C. § 2241, Jones must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  It is well-settled that "[a] necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States."  *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241; *Townsend v. Sain*, 372 U.S. 293, 312 (1963)).

Under the SCA, to the extent practicable, the BOP must "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Section 3624(c) does not guarantee that a prisoner will be placed in an RRC, nor does it entitle a prisoner to placement in an RRC for any minimum length of time. *See* 18 U.S.C. § 3624(c); *Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008).

The Court sets forth the law relating to the FSA below in Section III.B.I.

## III.    ANALYSIS

As previously stated, Jones seeks the following in the Petition: (1) for his sentence to be credited by one year under 18 U.S.C. 3621(e)(2)(B), or in the alternative, to be admitted into the RDAP and transferred to a lesser security facility so that he can participate in the RDAP; (2) for the BOP to apply FSA time credits he would have earned if participating in the RDAP and to apply his FSA time credits for other programs he has participated in so that he may be immediately considered for, and transferred to, pre-release custody; (3) for the BOP to immediately consider him for prerelease custody pursuant to 18 U.S.C. 3621(b) and 3624(c) and to immediately transfer him to a "lesser security facility (Minimum Security Camp)"; (4) "[i]n the alternative as a second option only" for the BOP to "restore all Gate Pass privileges and to 'Promulgate' a written policy for the Gate Pass Program where it is being unconstitutionally applied"; and (5) for the BOP to "bring Jones IFRP payments in compliance with his judgement and

Commitment set forth by his sentencing Judge and remove all sanctions i.e. FRP refuse and commissary restrictions."  (Dkt. 1 at 1-2.)

Although Jones' circumstances have changed during the pendency of this case, the Court addresses each claim below.

## A.    RDAP

Jones requests default judgment on his RDAP claim, asserting that Respondent failed to respond to it.  (Dkt. 47 at 1.)  However, in Respondent's Answer to the Petition, Respondent argued that Jones' request for his sentence to be reduced by one year pursuant to 18 U.S.C. § 3621(e) or to be immediately admitted into the RDAP should be dismissed as a successive claim and an abuse of the writ because Jones previously unsuccessfully brought this challenge in a prior habeas case in this District.  (Dkt. 19 at 16-17 (citing *Jones v. Fikes*, No. 20-cv-1341 SRN/HB, 2020 WL 8513799, at *4 (D. Minn. Nov. 2, 2020), *R. & R. adopted*, 2021 WL 533700, at *2 (D. Minn. Feb. 12, 2021); *see also* Dkt. 48 at 11-12 (Respondent's Supplemental Response); Dkt. 53 at 8 (Respondent's Update).)

28 U.S.C.§ 2244(a) provides that:

No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus . . .

28 U.S.C.§ 2244(a).

"This statute prohibits federal detainees from filing 'successive' habeas petitions—i.e., petitions that seek to re-raise claims that have already been raised and

adjudicated in a prior habeas proceeding." *Perkins v. Holder*, Civ. No. 13-2874

(PAM/FLN), 2014 WL 755378, at *3 (D. Minn. Feb. 26, 2014) (citing *Antonelli v.*

*Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) (stating "habeas petition

presenting claims that had been adjudicated on the merits in a prior habeas case was a

'successive petition' barred by § 2244(a)); *Stanko v. Davis,* 617 F.3d 1262, 1270 (10th

Cir. 2010) ("district court properly relied on § 2244(a) to dismiss habeas claims that had

been decided in a previous habeas case"); *Graham v. Warden of FCI Allenwood,* 348

Fed.Appx. 706, 707 (3rd Cir. 2009) (unpublished opinion) (finding a "second habeas

petition need not be considered, because the relief requested was denied in previous

habeas case)").

In June 2020, Jones brought a Section 2241 petition in this District where he

alleged, among other things, that: (1) he was arbitrarily denied placement into the RDAP

and asked the Court to either award him a year of credits or order the BOP to allow him

to participate in the RDAP; (2) he was denied placement in an RRC; and (3) his IFRP

payments were being improperly calculated, causing him to be placed in "Refuse Status"

and to be restricted from programming ("2020 Habeas Case"). *See Jones v. Fikes*, 20-cv-

1341 (SRN/HB), Dkts. 1, 6 (D. Minn. 2020); *see also Jones*, 2020 WL 8513799 at *1-2.

On November 2, 2020, U.S. Magistrate Judge Hildy Bowbeer recommended denial of

Jones' RDAP and RRC claims, finding that the Court lacked subject matter jurisdiction

over both claims. *Jones*, 2020 WL 8513799 at *4 (noting that the "BOP has the

discretion to determine eligibility for the" RDAP). After receiving written submissions

regarding the substance of Jones' IFRP claim, on January 19, 2021, Judge Bowbeer

recommended denial of that claim, finding Jones voluntarily agreed to pay $100 a month in IFRP payments and therefore, his sentence was not being unlawfully executed, noting that "the consequences for refusing to participate in the IFRP are not entitled to due process protection." *Jones v. Fikes*, Case No. 20-cv-1341 (SRN/HB), 2021 WL 536135, at *5-6 (D. Minn. Jan. 19, 2021). Jones objected to Judge Bowbeer's recommendations, and on February 12, 2021, U.S. District Judge Susan Richard Nelson overruled his objections and adopted Judge Bowbeer's recommendations in their entirety. *See Jones,* 2021 WL 533700, at *2-4.

Jones essentially reasserts the same RDAP claim in this current Petition as he did in the 2020 Habeas Case. (*See* Dkt. 1 (asking that he be awarded one year of RDAP credits, admitted into the RDAP, or transferred to a minimum-security facility so that he may participate in the RDAP).) Because Jones' current RDAP claim is a successive claim, and in any event, is a claim that could have been brought in his prior habeas proceeding, it must be dismissed. *See Nachtigall v. Class*, 48 F.3d 1076, 1079 (8th Cir. 1995) ("A district court can dismiss as abusive a habeas petition asserting new and different grounds for relief if the grounds were available but not relied on in an earlier petition.") (citations omitted); *see also Perkins*, 2014 WL 755378, at *4-5 (finding petitioner's claims should be summarily dismissed because they were raised or could have been raised in his previous Section 2241 habeas proceedings); *Knox v. Jett*, Civ. No. 10-4845 (JRT/JJG), 2010 WL 5692090, at *4-5 (D. Minn. Dec. 10, 2010) (recommending summary dismissal of the petition because the petitioner's claim had been previously adjudicated on the merits in a prior habeas corpus case), *R. & R.*

*adopted*, 2011 WL 381281, at *1 (D. Minn. Feb. 2, 2011); *Fisher v. Cruz*, Civ. No. 07-4556 (PAM/AJB), 2007 WL 4373108, at *2 (D. Minn. Dec. 13, 2007) (finding the petitioner abused the writ by "attempting to challenge the duration of his confinement by federal authorities based on claims that were raised, or could have been raised, in a prior § 2241 habeas proceeding").

**B.    FSA**

   **1.    FSA Requirements**

The FSA was signed into law on December 21, 2018, amends and expands the SCA, and provides, among other things, that "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General . . . shall develop and release publicly on the Department of Justice website a risk and needs assessment system" to be used to "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a)(1). On July 19, 2019, the Attorney General publicly released a risk and needs assessment system, stating the development of the PATTERN, which was updated in January 2020. *See The First Step Act of 2018: Risk and Needs Assessment System*, U.S. Dep't of Justice Office of the Attorney Gen. (July 19, 2019), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (last visited May 31, 2023); *see also The First Step Act of 2018: Risk and Needs Assessment System - UPDATE*, U.S. Dep't of Justice Office of the Attorney Gen. (January 2020), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (last visited May 31 2023).

According to the FSA, the BOP then had 180 days from July 19, 2019 to "implement and complete" the PATTERN assessment for each prisoner.  *See* 18 U.S.C. § 3621(h)(1)(A); *see also Manning v. Kallis*, No. 21-cv-160 (JRT/KMM), 2021 WL 4526653, at *1 (D. Minn. Sept. 9, 2021) ("The First Step Act next establishes January 15, 2020 as the deadline for the BOP to implement and complete the initial PATTERN assessment for each prisoner") (citing 18 U.S.C. § 3621(h)(1)).  The BOP was to provide opportunities for prisoners to participate in EBRR programs and PAs and "provide incentives and rewards for prisoners" who complete those programs and activities, including "increased phone privileges, additional visitation time, transfer to prisons closer to prisoners' residence upon release, and, for prisoners who complete EB[R]R programs [or PAs], 'time credits.'"  *Manning*, 2021 WL 4526653, at *1 (citing 18 U.S.C. §§ 3632(d)(1), (d)(2), (d)(4)).

The BOP then had two years from the January 15, 2020 date, or until January 15, 2022, to "phase in" the EBRR programs and PAs for each prisoner.  18 U.S.C. § 3621(h)(2)(A); *see also Depoister v. Birkholz*, No. 21-cv-684 (ECT/BRT), 2021 WL 3492295, at *2 (D. Minn. Aug. 9, 2021).  During the 2-year phase-in period, the BOP's "priority for such programs and activities shall be accorded based on a prisoner's proximity to release date."  18 U.S.C. § 3621(h)(3).  The FSA permits the BOP to expand any EBRR programs and PAs that exists at a prison as of the date the Statute was enacted and provides that the BOP "*may* offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D."  18 U.S.C. § 3621(h)(4) (emphasis added).

An eligible inmate "may" earn FSA time credits "for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020." 28 C.F.R. § 523.42(b)(2). According to the BOP:

> [F]or inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly.

*See FSA Time Credits A Rule by the Prisons Bureau on 01/19/2022*, Federal Register, The Daily Journal of the United States Government, https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits (last visited May 31, 2023).

Eligible prisoners that "successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation" in such programs or activities, and a prisoner that is determined by the BOP to be "at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation . . ." 18 U.S.C § 3632 (d)(4)(A)(i)(ii). "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or

PA." 28 C.F.R. § 523.41(c)(2).  An eligible inmate is generally not considered to be

"successfully participating" in EBRR programs or PAs in situations including, but not

limited to the following:

> (i) Placement in a Special Housing Unit;
>
> (ii) Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
>
> (iii) Temporary transfer to the custody of another Federal or non–Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);
>
> (iv) Placement in mental health/psychiatric holds; or
>
> (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment)."

28 C.F.R. § 523.41(c)(4)(i)-(v).

However, "[t]emporary operational or programmatic interruptions authorized by

the Bureau that would prevent an inmate from participation in EBRR programs or PAs

will not ordinarily affect an eligible inmate's 'successful participation' for the purposes

of FSA Time Credit eligibility."  28 C.F.R. § 523.41(c)(3).  FSA time credits for inmates

that successfully participate in EBRR programs or PAs "shall be applied toward time in

prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  Prelease custody

includes being placed in either home confinement or a residential reentry center.  18

U.S.C. § 3624(g)(2)(A)(B).  An inmate may lose FSA Credits "for violation of the

requirements or rules of an EBRR Program or PA" and the inmate may appeal that loss

"through the Bureau's Administrative Remedy Program."  28 C.F.R. § 523.43(a)-(b).

An inmate that is eligible to apply his FSA Credits is someone who:

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner—

> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

>> (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

>> (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

>> (cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1).

**2.      FSA Time Credits as They Relate to the RDAP**

Jones asks the Court to order the BOP to apply the FSA time credits he would have earned if he had been permitted to participate in the RDAP.  (Dkt. 1 at 2.)  The Court concluded in Section III.A above that Jones' RDAP claim should be dismissed. The Court therefore recommends dismissal of the Petition to the extent Jones seeks an application of FSA time credits based on what he would have earned had he been participating in the RDAP.

**3.      Calculation and Application of Jones' FSA Time Credits, Prerelease Custody, and Lesser Security Facility**

Based on his filings, the crux of Jones' FSA claim is that he was improperly disallowed 554 program days for being in IFRP "refuse" status; his statutory release date should be reduced by 365 days due to his earned FSA time credits; he should be transferred to a RRC or home confinement for the remainder of his incarceration period; and his remaining earned FSA time credits and FSA time credits that he continues to earn should be applied towards his supervised release.  (*See* Dkt. 23 at 4; *see also* Dkt. 41 at 1-2; Dkt. 51 at 1.)  In the Reply to Preliminary Injunction Motion, Jones maintains that he has a liberty interest "in his First Step Act Good Conduct time credits," that he was not notified that the IFRP was a PA until the BOP issued Program Statement 5410.01, and that he should be earning time credits at a rate of 15, instead of 10, days per 30 days of successful participation.  (Dkt. 41 at 1-2.)

Respondent alleges in the Supplemental Response filed on March 20, 2023 that Jones' last FSA assessment was on February 11, 2023, at which time Jones had accrued

878 program days; that Jones had been properly disallowed 554 program days due to being in IFRP refuse status; and that Jones had earned a total of 350 FSA time credits towards early release. (Dkt. 48 at 3 (citing Dkt. 49 (Winger Decl.) ¶¶ 4-6; Dkt. 49-1, Gov't Ex. 1).) In the Update, Respondent asserts that Jones is earning time credits at a rate of 15 days for every 30 days of programing and therefore, "his March 2023 FSA Time Credit Assessment monthly update would reflect that he earned an additional 15" days of FSA time credits, "for the maximum total of 365 days" towards early release. (Dkt. 53 at 4 n. 1.) Most recently, Respondent states that Jones has been transferred to a "halfway house under the supervision of the Bureau of Prisons' Nashville Residential Reentry Office" and that his projected release date is October 13, 2023 via an FSA release. (Dkt. 53 at 1-2.) Respondent argues that because the BOP has transferred Jones to an RRC, "which is the ultimate relief requested in his petition, and based on the projected release date, . . . 365 days of" FSA time credits would be applied towards his early release, Jones' FSA related claims have become moot. (*Id.* at 4.) Respondent further argues that these claims are moot because: (1) Congress has statutorily barred inmates from applying more than 365 days of FSA time credits towards early release; and (2) any further FSA time credits "granted to Jones would be applied toward his pre-release custody, which would be of no benefit to him since he has already been transferred to pre-release custody in an RRC." (*Id.* at 3-5 (citing 18 U.S.C. § 3624(g).) According to Respondent, none of the mootness exceptions apply here. (*Id.* at 5.)

The Court first clarifies a few points. First, Jones appears to confuse GCT credits with FSA time credits. (*Compare* Dkts. 1 at 2 and 41 at 1 (referring to FSA "Good

Conduct time credits"), *with* Dkt. 22 at 2-3 (referring to the BOP's disallowance of his FSA time credits), *and* Dkt. 23 at 1-4 (noting that he was improperly disallowed 554 FSA program days).)  The Court therefore finds it necessary to clarify that GCT and FSA time credits are separate and distinguishable.  *See* 18 U.S.C. § 3624(b); *see also Fiorito v. Fikes*, Case No. 22-CV-0749 (PJS/TNL), 2022 WL 16699472, at *5 (D. Minn. Nov. 3, 2022) (stating there are two critical differences between GCT and FSA time credits: (1) "good-time credits entitle a prisoner to a reduction in his sentence, period. . . .  In contrast to prisoners who earn good-time credits, prisoners who earn [FSA time credits] may not be able to *apply* those [FSA time credits]" given contingencies in the FSA; and (2) "unlike good-time credit accumulated under § 3624(b), [FSA time credits] are not a general entitlement.  Instead, prisoners are merely afforded the *opportunity* to earn [FSA time credits] by participating in recidivism-reduction programming").  Based on the parties' submissions, the Court understands Jones to be challenging the BOP's calculation, disallowance, and application of his FSA time credits only, not his GCT credits.

Second, Jones no longer challenges the BOP's disallowance of time credits due to him not being in a "qualifying admit status based on his locations."  (*See* Dkts. 22, 23, 41.)  And moreover, the record now reflects that Jones was disallowed program days for being in IFRP refuse status only.  (*See* Dkt. 49-1, Gov't Ex. 1 at 1-2 (Jones' FSA Time Credit Assessment dated February 11, 2023, showing Jones as having 554 program days disallowed).)

Turning to his FSA claims, the Court finds that these claims should be dismissed as Jones has received the relief requested in the Petition and Motions.[4]

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000), citing U.S. Const. art. III, § 2, cl. 1).  "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Id.* (quoting *Haden*, 212 F.3d at 469).  When a case becomes moot, a federal court cannot "address the merits because any opinion [the court] would issue would be merely advisory." *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.* ("*In re Search Warrants*"), 487 F.3d 1190, 1192 (8th Cir. 2007) (citing *Haden*, 212 F.3d at 469).

---

[4]    The Court notes its concerns regarding the BOP's calculations of Jones' time credits, including the BOP's failure to state precisely when the IFRP was assigned to Jones for purposes of the FSA; the BOP's failure to respond to Jones' argument regarding the rate at which Jones was earning time credits even after the Court ordered it to do so; and the fact that Jones did not start earning time credits at a rate of 15 days for every 30 days of successful participation in EBRRs or PAs until his seventh risk assessment (*see* Dkt. 49-1, Gov't Ex. 1 at 2; *see also* 18 U.S.C § 3632 (d)(4)(A)(i)(ii) (stating that eligible prisoners that "successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation" in such programs or activities, and a prisoner that is determined by the BOP to be "at a minimum or low risk for recidivating, who, **over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation** . . .") (emphasis added).

Here, Jones seeks to be transferred to an RRC or home confinement.  Respondent states, and Jones confirms, that he has now been transferred to an RRC in Nashville.  (*See* Dkt. 53 at 1-2; *see also* Dkt. 56 at 1; https://www.bop.gov/inmateloc/ (last visited May 31, 2023).)  As such, there is no further relief the Court can provide regarding this request.  *See* 18 U.S.C. § 3632(d)(4)(C) (providing that an inmate's FSA time credits "shall be applied toward time in prerelease custody or supervised release"); *see also* 18 U.S.C. § 3624(g)(2)(A)(B) (stating prelease custody includes being placed in either home confinement or an RRC).

Jones also asks the Court to order Respondent to properly calculate his FSA time credits, apply 365 days of time credits to his release date, and apply additional time credits he has earned and continues to earn towards supervised release.  As of February 11, 2023, Jones had earned 350 days of FSA time credits towards his release, resulting in an early release date of October 28, 2023.  (Dkt. 49-1, Gov't. Ex. 1 at 1 (Jones' FSA Time Credit Assessment dated February 11, 2023); *see also* Dkt. 49-2, Gov't. Ex. 2 at 2).)  In the Update, Respondent represents that because Jones is earning time credits at a rate of 15 days per 30 days of programming, he would be credited with an additional 15 days of FSA time credits during his March 2023 FSA Time Credit Assessment monthly update, which would be applied towards early release.  (Dkt. 53 at 4 n. 1.)  The exhibits submitted with Jones' Response to Update show that he has now been credited with the 15 days of FSA time credit; a total of 365 days of FSA time credits have been credited towards his sentence; and he now has an early release date of October 13, 2023.  (Dkt. 56-1, Pet. Ex. 1 at 2-3.)  Because Jones also has 3 years of supervised release as part of

25

his sentence, 365 days of FSA time credits is the maximum amount of time credits that can be applied towards his early release under the FSA. (*See* Dkt. 49-2, Gov't Ex. 2 at 2-3 (showing Jones has 3 years of supervised release); *see also* 18 U.S.C. § 3624(g)(3) ("If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632."); 28 C.F.R. § 523.44(d) (providing the criteria an inmate must meet for the BOP to apply the inmate's FSA time credits towards early transfer to supervised release under 18 U.S.C. § 3624(g)); *Moore v. J. Rardin*, Case No. 22-cv-2476 (NEB/TNL), 2022 WL 18542331, at *4-6 (D. Minn. Dec. 1, 2022) (finding pursuant to 18 U.S.C. § 3624(g)(3) that the BOP had properly applied 365 days of time credits the petitioner had earned to his sentence where the petitioner had earned a total of 690 days of time credits but had a term of supervised release imposed as part of his sentence); *Mills v. Starr*, Civ. No. 21-1335 (SRN/BRT), 2022 WL 4084178, at *4 (D. Minn. Aug. 17, 2022) ("Early transfer to supervised release effectively reduces an inmate's sentence by, at max, one year."); *Burruss v. Hawkins*, Civ. No. H-22-2740, 2023 WL 319955, at *6-7 (S.D. Tex. Jan. 19, 2023) (finding the BOP properly applied and reduced petitioner's sentence by 365 days from the 525 days of FSA time credits the petitioner had been credited with where the petitioner had an 8-year term of supervised release to follow her term of imprisonment and stating that the remainder of petitioner's

credits, as well as any additional credits earned while in prison, "will be applied to her time in pre-release custody . . .") (citing 18 U.S.C. § 3624(g)(3)).

As such, because Jones has been transferred to an RRC and 365 days of FSA time credits have been applied to his sentence, Jones no longer has concrete, redressable injuries as to his FSA claims, and those claims have become moot.[5]  As a result, the Court is unable to provide any further relief to Jones as it relates to his FSA claims, and therefore, does not address the merits of those claims as any such opinion would be merely advisory.  *See Ali*, 419 F.3d at 723; *see also In re Search Warrants*, 487 F.3d at 1192.

Accordingly, for all of these reasons, the Court recommends that Jones' Petition be denied as moot as it relates to his FSA claims, including his contention that his time credits were improperly calculated, his requests that his statutory release date be reduced by 365 days, his request that his remaining FSA earned time credits and FSA credits that he continues to earn be applied towards supervised release, and that he be transferred to a lesser security facility, RRC, or home confinement for the remainder of his incarceration period.

---

[5]     None of the exceptions to the mootness doctrine apply here.  *See Ahmed v. Sessions*, Case No. 16-cv-02124 (DSD/HB), 2017 WL 3267738, at *2-3 (D. Minn. July 11, 2017 (listing four exceptions to the mootness doctrine, including that (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.); *see also Ireland v. Anderson*, No. 3:13-CV-3, 2016 WL 7324102, at *2 (D.N.D. July 5, 2016) (citation omitted).

C.    **Second Chance Act**

Regarding Jones' request for "immediate release" under the SCA (*see* Dkt. 22 at 3), he does not elaborate on this claim but contends that as of March 23, 2023, he had not benefited from the SCA.  (Dkt. 51 at 1.).

Under the SCA, to the extent practicable, the Bureau of Prisons ("BOP") must "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."  18 U.S.C. § 3624(c)(1).  Section 3624(c) does not guarantee that a prisoner will be placed in an RRC, nor does it entitle a prisoner to placement in an RRC for any minimum length of time.  *See* 18 U.S.C. § 3624(c); *Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008).

As discussed in Section III.B above, Jones has now been transferred to an RRC and is expected to be transferred to supervised release on October 13, 2023.  Moreover, the Court lacks authority over Jones' placement.  *See United v. Brown*, Case No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn. April 21, 2020) (stating that "the BOP has exclusive authority to determine the placement of prisoners. The First Step Act, CARES Act, and Second Chance Act merely give eligible inmates the possibility to be considered for home confinement or halfway house placement.") (collecting cases); *see also Hansen v. Rios*, Case No. 19-cv-374 (JRT/TNL), 2019 WL 4307129, at *2 (D. Minn. July 19, 2019) ("The Second Chance Act authorizes only one person – the Attorney General – to release a prisoner to home confinement. The Act gives the Court

no such authority."), *R. & R. adopted*, 2019 WL 4305718, at *3 (citations omitted).  The

Court therefore recommends that Jones' SCA claims be denied.

**D.    Gate Pass Privileges**

In the Petition, Jones requests "[i]n the alternative as a second option only" for the

BOP to "restore all Gate Pass privileges and to 'Promulgate' a written policy for the Gate

Pass Program where it is being unconstitutionally applied" (Dkt. 1),

In the Motion for Default Judgment filed on March 8, 2023, Jones asserts that he

"will also voluntarily dismiss any claim against the 'Gate Pass' Program at FCI

Sandstone."  (Dkt. 47 at 1.)  As such, the Court recommends that Jones' Gate Pass

privilege claim be denied as moot and does not therefore reach the merits of this claim.

In any event, this is not the sort of claim that Jones can properly assert in a § 2241

proceeding.  *See Cardenas v. Watson*, Case No. 17-CV-4129, Dkt. 4 at *1 (D. Minn.

2017) (stating in a § 2241 proceeding where the petitioner, in part, challenged the gate

pass program at his place of incarceration that "Cardenas's challenge in these

proceedings is not directed toward the *fact* that he is confined or the *duration* of that

confinement, but instead toward the *conditions* of his confinement and the process used

by prison officials to determine those conditions. Such challenges must usually be

presented in traditional civil litigation.") (citing cases)).

**E.    IFRP**

Just like his RDAP claim, Jones reasserts a similar IFRP claim in his current

habeas Petition as he did in the 2020 Habeas Case.  (*Compare* Dkt. 1 at 2 (asking the

Court to order the BOP to "bring Jones IFRP payments in compliance with his judgement

and Commitment set forth by his sentencing Judge and remove all sanctions i.e. FRP refuse and commissary restrictions") *with Jones*, 2021 WL 536135, at *1 (wherein Jones claimed the BOP incorrectly calculated his IFRP payments which was inconsistent with the judgment entered in his criminal case, causing him to be placed in IFRP refuse status and restricted him from programming).) As stated previously, Judge Bowbeer found Jones' IFRP payments were not an unlawful execution of his sentence given that "Jones voluntarily agreed to pay $100 a month in IFRP payments" towards his court-ordered restitution and that "Jones' challenge to the IFRP payments fails." *Jones*, 2021 WL 536135, at *5-6.

Because Jones' IFRP claim is a successive claim and is a claim that could have been brought in his 2020 Habeas Case, it must be dismissed. *See Perkins*, 2014 WL 755378, at *4-5 (finding petitioner's claims should be summarily dismissed because they were raised or could have been raised in his previous Section 2241 habeas proceedings); *see also Knox*, 2010 WL 5692090, at *4 (recommending summary dismissal of the petition because the petitioner's claim had been previously adjudicated on the merits in a prior habeas corpus case).

## F.     Request for Preliminary Injunction in the Petition

Jones asks the Court to issue a "temporary restraining order, preliminary injunction or bond releasing or transferring [him] into pre-release custody pending the resolution of this litigation." (Dkt. 1 at 1; *see also* Dkt. 23 (Preliminary Injunction Motion).)

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In view of the Court's recommendation for dismissal of the Petition, the Court also recommends denial of Jones' request for temporary restraining order, preliminary injunction or bond, as moot. *See Cambilargiu v. Bank of Am., N.A.*, No. 13-cv-190 (PAM/JSM), 2013 WL 12155363, at *2 (D. Minn. Apr. 16, 2013) (denying the plaintiffs' motion for preliminary injunction as moot after granting defendants' motion to dismiss); *see also Njaka v. Kennedy*, Civ. No. 12-2712 (JRT/JJG), 2014 WL 4954679, at *18 (D. Minn. Sept. 30, 2014) ("[I]n light of the Court's determination as to dismissals, the motions [for preliminary injunction and temporary restraining order] should be denied as moot.").

## G. Preliminary Injunction Motion, Motion to Deny Extension Request, and Motion for Default Judgment

Because the Court recommends denial of the Petition, Jones' Preliminary Injunction Motion (Dkt. 23), Motion to Deny Extension Request (Dkt. 45), and Motion for Default Judgment (Dkt. 47) should be denied as moot. *See Jacqueline Denise Mills v. Warden M. Starr*, Case No. 21-cv-1335 (SRN/DTS), 2023 WL 2645030, at *4 (D. Minn. March 27, 2023); *see also Njaka*, 2014 WL 4954679, at *18 ("[I]n light of the Court's determination as to dismissals, the motions should be denied as moot.")

## H. Evidentiary Hearing

Because the Court can resolve Jones' Petition by relying on the record, an evidentiary hearing is not necessary. *Wallace v, Lockhart*, 701 F.2d 719, 729-30 (8th Cir.

1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citation omitted).

## IV.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Jeremy Jones' Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**;

2. Petitioner Jeremy Jones' request for preliminary injunction (Dkt. 23) be **DENIED AS MOOT**;

3. Petitioner Jeremy Jones' Supplemental Briefing and Motion to Deny All Request for Extension of Time (Dkt. 45) be **DENIED AS MOOT**;

4. Petitioner Jeremy Jones' Motion for Default Judgment (Dkt. 47) be **DENIED;** and

5. This action be **DISMISSED**.

Dated: May 31, 2023                    *s/Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D.

Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c)